**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TOM BRAZIEL, Individually and as
Trustee of the TOM AND JEAN BRAZIEL
REVOCABLE GRANTOR TRUST,

      Plaintiff,

v.                                                                                                        CV 10-0678 KBM/WPL

JOHN B. LINDSAY, Personally, and
MARY KIDWELL and KATHRYN WILLIAMS,
Personally and as Co-Trustees of the JOHN
LINDSAY IRREVOCABLE GRANTOR TRUST,

      Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**

This lawsuit stems from the joint ownership and incorporation of the Circle Cross Land & Cattle Co., Inc. ("Circle Cross") in Otero County, New Mexico. Plaintiff Tom Braziel and Defendant John Lindsay were co-directors of Circle Cross since 1999. Lindsay was the majority owner, originally holding 85% of the shares of Circle Cross, while Braziel served as the ranch manager and minority owner, initially holding 15% of the shares. Following the purchase of Circle Cross, the parties orally amended their initial agreement, increasing Braziel's share percentage at least slightly. Eventually, the parties discussed parting ways, and, ultimately, Braziel was terminated as ranch manager and removed as an officer and director. The amendments to the agreement and the dissolution of Braziel's interest in Circle Cross are the subjects of this lawsuit, which Braziel has brought against Lindsay, Mary Kidwell, and Kathryn Williams (collectively, "Defendants").

Braziel served his first Interrogatories and Requests for Production in December of 2010.

(Doc. 36.) The Defendants responded in August of 2011 (Doc. 56), objecting to a few interrogatories and several requests for production. Braziel now seeks an order compelling responses. (Doc. 61.) The issues in the motion have been narrowed following additional discovery. (Doc. 67 at 3.) Having reviewed the pleadings, the discovery requests and responses, and the relevant law, I find that the motion should be granted in part and denied in part, as described below.

## I. INTERROGATORIES

I begin by discussing some general principles of law that apply to interrogatories. A party is permitted to inquire by interrogatory regarding any nonprivileged matter relevant to any claim or defense. FED. R. CIV. P. 33(a)(2) (incorporating by reference FED. R. CIV. P. 26(b)). The responding party must answer each interrogatory "to the extent it is not objected to . . . ." FED. R. CIV. P. 33(b)(3). Grounds for objections which are not stated in a timely manner are considered waived. FED. R. CIV. P. 33(b)(4). An objection that an interrogatory is overly broad may be sustained where the question as written extends to information not relevant to the complaint. STEVEN BAICKER-MCKEE, ET AL., FEDERAL CIVIL RULES HANDBOOK 856 (2011). Objections based on overbreadth and undue burden may also be sustained when the interrogatory requests "every fact" supporting an allegation or defense. *See Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 618-19 (D. Kan. 2005) (citations omitted).

<u>Interrogatory No. 5 (Lindsay)</u>: In this interrogatory, Braziel requested that the Defendants provide the factual bases for each affirmative defense raised in their answers, including a list of all supportive records, supportive documents, and persons with knowledge. (Doc. 61 at 2; Doc. 61 Ex. C at 1.) Braziel now states that he will accept the principal or material facts relied on for each defense in lieu of a full narrative, combined with a list of those with knowledge and supportive

records. (Doc. 61 at 3; Doc. 67 at 4.)

Essentially, this interrogatory constitutes a contention interrogatory, or a request that the opposing party indicate what it contends and state all facts and evidence upon which the contention is based. *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). While contention interrogatories may be inappropriate when broadly drafted and served early in the discovery process, they can also help to narrow and clarify the issues in a case. *Id.* (citations omitted). Though a request for a narrative account of a party's case is not proper, it is acceptable to ask for principal or material facts supporting a contention. *Id.* (citation omitted).

Here, Lindsay objects that the interrogatory contains multiple separate interrogatories and that the interrogatory is overly broad. (Doc. 61 at 2;  Doc. 61 Ex. C at 1; Doc. 63 at 1-2.) . The Kansas District Court considered similar objections in *Cardenas*. 231 F.R.D. at 618-20. There, the interrogatory requested that the responding party state with particularity each allegedly defective element in the design of a child safety restraint system and how that element was defective. *Id.* at 617. The court held that the interrogatory did not require a narrative account of the party's entire case. *Id.* at 619. It described that overly broad interrogatories often ask the responding party to:

> (1) state in detail "each and every fact" upon which the allegations and claims contained in certain paragraphs of its complaint were based, (2) state the names and addresses of each and every person who had information or knowledge concerning such facts, and (3) identify each and every document that related to all of those allegations and facts.

*Id.* at 618-19 (citing *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. Civ. A. 03-2470-CM-DJW, 2005 WL 44534, at *8 (D. Kan. Jan.7, 2005)). It further held that the interrogatory did not contain multiple interrogatories because it was directed at eliciting details concerning a common theme. *Id.* at 620.

Braziel has essentially mooted the overbreadth objection by stating that he will accept the principal facts underlying each defense. However, the interrogatory requests the factual bases and support for twelve separate affirmative defenses within a single interrogatory. While there may be some overlap in the defenses, it is clear that Braziel has combined multiple interrogatories into a single question. *Compare with Lucero*, 240 F.R.D. at 594-95 (overruling objections to contention interrogatories that tracked the allegations of the complaint and requested material facts, where one interrogatory addressed one claim). Accordingly, I sustain the objection to the interrogatory as written.

Interrogatory No. 7 (Kidwell and Williams): This interrogatory requests a list and detailed description of all communications between Kidwell, Williams, or their representatives and Braziel or his family regarding the subject matter of the lawsuit. (Doc. 61 at 4; Doc. 61 Ex. A at 1; Doc. 61 Ex. B at 1.) Kidwell and Williams each provided an answer regarding their direct communications with the Braziels but did not mention their representatives. (Doc. 61 at 5; Doc. 61 Ex. A at 1; Doc. 61 Ex. B at 1.) The Defendants contend that their answers were responsive. (Doc. 63 at 2.)

The interrogatory clearly requested information about communications by representatives of Kidwell and Williams. Kidwell and Williams omitted mention of their representatives in their responses. Accordingly, they shall supplement their responses to address any conversations between their representatives and Braziel or his family regarding the subject matter at issue in this litigation. If no such conversations took place, they must clearly state that fact in their supplemental responses.

Interrogatory No. 14 (Lindsay): Braziel requested that Lindsay list and describe the communications by him or a representative with the Braziels regarding the subject matter of this litigation, including the parties to the conversation and the dates, nature, and substance of the

4

communication. (Doc. 61 at 6; Doc. 61 Ex. C at 2.) Lindsay objected initially that the interrogatory is overly broad, calling for a narrative account of the parties' cases. (Doc. 61 at 6; Doc. 61 Ex. C at 2.) He did not object that the interrogatory was unduly burdensome or overly broad in temporal scope until his response to the motion to compel (Doc. 63 at 3), and, therefore, I deem such objections waived. *See* FED. R. CIV. P. 33(b)(4) ("Any ground not stated in a timely objection is waived . . . .").

The interrogatory is not overbroad. It does not ask for each and every fact supporting an identified defense, nor does it request a narrative of the responding party's case. While the amount of information requested is likely significant, the conversations between Lindsay and the Braziels regarding Circle Cross are crucial to the development of this case. Accordingly, the objection is overruled, and Lindsay is ordered to supplement his response to Interrogatory Number 14.

## II.   REQUESTS FOR PRODUCTION

The law governing requests for production is very similar to that for interrogatories. A party is permitted to request the inspection or production of any document, broadly defined, that is relevant to any claim or defense, within the opposing party's control, and not privileged. FED. R. CIV. P. 34(a) (incorporating by reference FED. R. CIV. P. 26(b)). The responding party must respond in writing to each item or category either stating "that inspection and related activities will be permitted as requested or . . ." stating an objection. FED. R. CIV. P. 34(b)(2). The documents must be produced as they are kept in the ordinary course of business; alternatively, they may be organized and labeled to correspond to the categories in the request. FED. R. CIV. P. 34(b)(2)(E). While the dumping of large quantities of unrequested materials is impermissible, the producing party is not required, under Rule 34, to segregate materials according to each request or each category within

a request. WRIGHT & MILLER, 8B FEDERAL PRACTICE & PROCEDURE § 2213 (3d ed. 2011).

Request No. 1: Braziel requested that Lindsay provide all contracts and agreements entered by Circle Cross since June of 2010, including employment, legal and accountant contracts. (Doc. 61 at 7; Doc. 61 Ex. C at 2.) Lindsay does not object to the production of these documents but merely asserts that the documents have already been produced through a subpoena to the Accounting & Consulting Group ("ACG"), accountant and bookkeeper for Circle Cross. (Doc. 61 at 7; Doc. 61 Ex. C at 2.).

Certainly, purchases for goods or services fall under "all contracts and agreements." (*See* Doc. 63 at 4.) While an accountant would have records of such purchases, it is less clear that the accountant would receive and keep a copy of each contract. Furthermore, Braziel's request for "all contracts and agreements" is both broader and narrower than copies of all financial transactions. Accordingly, Lindsay is ordered to supplement this response and to produce all contracts and agreements entered by Circle Cross since June of 2010. However, Lindsay is not required to formally label every responsive document so long as he produces the documents as they are kept in the usual course of business.

Request No. 2: Braziel sought complete copies of all of the files and documentation regarding Circle Cross maintained by four contractors. (Doc. 61 at 8; Doc. 61 Ex. C at 2.) The Defendants first objected, arguing that files and documentation include attorney-client privileged material and that the request is unduly burdensome, and then stated that the files of two contractors were produced pursuant to subpoena and the file of the third would be produced when it was obtained. (Doc. 61 at 8; Doc. 61 Ex. C at 2.) I will address the contractors separately.

*A.     ACG, corporate accountant and bookkeeper, and Kelly Sweetser, corporate forensic CPA*: Braziel subpoenaed partial files from both ACG and Sweetser but contends that the complete files have not been produced. (Doc. 67 at 7.) Lindsay states that ACG and Sweetser represented that their entire files were produced and so contends that there is nothing more to produce. (Doc. 63 at 5.)

On their face, the subpoenas did not request the production of the entire files. (Doc. 61 Ex. I at 4; Doc. 61 Ex. J at 4.) However, the information requested was extensive, and it would be reasonable for the responding parties to produce their entire files rather than sort through to find the specific documents requested. For those reasons and because ACG and Sweetser represent that their entire files were produced, I find no reason to order supplementation.

*B.     Jerry Fowler, retained to value Circle Cross*: Braziel states that Fowler's "file" was produced, but that it "is not [sic] file at all." (Doc. 67 at 7.) The "file" from Dr. Fowler includes thirteen pages of applications to validate improvements and depreciation reports. (Doc. 67 Ex. S.) Nowhere on these documents is Dr. Fowler's name and nowhere included are any records regarding contracts with or billing of Circle Cross or Lindsay. Lindsay has not objected to this request, and so he is required to produce the whole file. He claims to have done so; accordingly, despite the sparse file, I will not order supplementation.

*C.     John R. Hakanson, corporate counsel*: Hakanson's was the only file not ultimately produced by the Defendants. Braziel asserts that this file must be produced because it is not protected by attorney-client privilege since Hakanson was engaged as legal counsel for Circle Cross in July of 2010 and Braziel was a shareholder and part owner of Circle Cross. (Doc. 61 at 9.) Braziel also argues that any privilege has been intentionally and repeatedly waived. (*Id.*) Lindsay contends that the attorney-client privilege applies because the Defendants hired Hakanson to represent them. (Doc.

7

63 at 5. *See also* Doc. 63 Ex. K.) He further asserts that the inadvertent disclosure of documents did not waive the privilege because only six documents were disclosed, they were produced by third parties, and Lindsay was not aware of this disclosure until the motion. (Doc. 63 at 6.)

This lawsuit was brought in federal court pursuant to the court's diversity jurisdiction. (*See* Doc. 4 at 3.) Because state law will determine the outcome of the substantive issues in this case, New Mexico law is also determinative as to privilege. FED. R. EVID. 501; *Murphy v. Gorman*, 271 F.R.D. 296, 303 (D.N.M. 2010) (citing *Frontier Ref., Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998)). In New Mexico, the attorney-client privilege is codified as New Mexico Rule of Evidence 11-503 and protects all confidential communications between a client and an attorney made in order to facilitate the rendering of legal services. The party asserting the privilege bears the burden of proving that the privilege applies. *Gorman*, 271 F.R.D. at 304 (citations omitted).

At issue here is the attorney-client privilege between an attorney and both an individual client and a corporate client. The privilege belongs to the client. N.M. R. EVID. 11-503; *In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998) (citations omitted). Here, this principle means that the privilege belongs to Lindsay and Circle Cross. Braziel argues that the attorney-client privilege does not preclude him from receiving information because he is a shareholder of the corporate client. However, the law on this issue is clear: "A corporation and a shareholder—even a sole shareholder—are separate entities . . . ." *Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1263 (D.N.M. 2000) (quoting *Marchman v. NCNB Texas Nat'l Bank*, 898 P.2d 709, 716 (N.M. 1995)). An attorney for a corporation represents the corporation and not the shareholders or agents of the corporation. *See id.* at 1263-64; *Delta Automatic Sys., Inc. v. Bingham*, 974 P.2d 1174, 1178 (N.M. 1998). Accordingly, the attorney-client privilege protects information sought by shareholders from

the corporation's attorney about the subject matter of the representation. *Schein v. N. Rio Arriba Elec. Coop., Inc.*, 932 P.2d 490, 495 (N.M. 1997).

Though the attorney-client privilege may apply, it does not necessarily protect all information in an attorney's file. *See id.* (citing *Diversified Dev. & Inv., Inc. v. Heil*, 889 P.2d 1212, 1218 (N.M. 1995)) ("[T]he privilege does not preclude discovery of the instructions given to the attorney by the client, nor does the privilege bar discovery of the nature and scope of an attorney's authority."). Rather, the privilege applies to confidential communications made for the purpose of rendering legal services between an individual or corporation and an attorney or her representative. N.M. R. EVID. 11-503. Where a party claims that requested documents are subject to privilege and withholds those documents accordingly, that party is required to describe the nature of the documents not disclosed in a manner that enables the other party to assess the claim. FED. R. CIV. P. 26(b)(5)(A). Lindsay did not provide a privilege log despite this clear requirement. Therefore, Lindsay must supplement his response and provide a privilege log to substantiate his assertion of attorney-client privilege.

Braziel also claims that the privilege was waived when at least six communications between Lindsay and Hakanson and another attorney, Paul M. Kienzle, III, were produced. (Doc. 61 at 10-11; Doc. 61 Exs. M-R.) Waiver may occur if the privilege holder "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." N.M. R. EVID. 11-511. The party asserting the privilege retains the burden of establishing that there was no waiver. *Hartman v. El Paso Natural Gas Co.*, 763 P.2d 1144, 686-87 (N.M. 1988) (citation omitted). To determine whether there was a waiver, the court must consider factors including:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent

>   disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; (5) whether the overriding interests of justice would be served by relieving a party of its error.

*Id.* at 687 (quoting *Parkway Gallery Furniture, Inc. v. Kittinger/Pa. House Group, Inc.*, 116 F.R.D. 46, 50 (M.D.N.C. 1987)).

In this case, Lindsay has described no precautions taken to ensure that documents reflecting communications with his attorney, potential attorney, and experts were not disclosed. There were at least several disclosures regarding communications with or about the experts, and there were apparently no measures taken to rectify the disclosures. However, the information contained in the disclosures is not significant; the substance relates to information that would be requested from Braziel, an overview of the history of Circle Cross, and some information regarding the finances of Circle Cross and the activities of its accountant. (*See* Doc. 61 Exs. M-R; Doc. 67 Ex. V.) From reviewing these documents, it is unclear how they came into Braziel's possession – Lindsay asserts that they were produced by third parties without notice to Lindsay or his attorney (Doc. 63 at 6), while Braziel asserts that some were produced by Lindsay and Hakanson (Doc. 67 at 10). Due to the lack of protection of these documents, I find that the privilege is waived with regard to any potentially privileged documents already produced.

Braziel argues that the scope of the waiver constituted the entire subject matter of the litigation. In *Hartman*, the New Mexico Supreme Court considered whether the attorney-client privilege was waived by the inadvertent disclosure of two documents written by the defendant's attorneys concerning a business strategy that allegedly led to the breach of several contracts. *Id.* at 682-84, 686-88. Despite the incriminatory nature of these documents, the court held that the privilege was only waived as to those documents and that no additional production of privileged

10

documents was warranted. *Id.* at 687-88. Braziel also relies on *Gingrich v. Sandia Corp.*, 165 P.3d 1135 (N.M. Ct. App. 2007), in which the produced, privileged document was a report that directly related to the plaintiff's substantive claims and the defendant's asserted defenses. *Id.* at 1139-41. Even in that circumstance, the court only found the privilege waived for documents concerning the report. *Id.* at 1141-42. Here, the subject matter of the disclosures relates to neither Braziel's substantive claims nor Lindsay's asserted defenses. The scope of the waiver here clearly does not extend to the entire subject matter of the litigation.

Braziel's central argument for the production of the entire Hakanson file is based on missing or altered portions of Sweetser's records. (Doc. 67 at 11.) Because a privilege log has not been provided, I cannot assess what documents are included in the Hakanson file that relate to Sweetser. Accordingly, Braziel may renew his argument regarding waiver of attorney-client privilege as it relates to the retention and work of Sweetser once the privilege log is produced.

Requests Nos. 3, 4, 5, 11, 13 & 15: Braziel made a number of requests to which Lindsay stated that he submitted "Bates documents 000001 through 001299 to Plaintiff." (Doc. 61 at 15-16, 18-20; Doc. 61 Ex. C at 2-4.) This refers, apparently, to the documents provided in the Defendants' initial disclosures. (Doc. 61 at 16.) Braziel contends that the lack of specificity in that response renders it essentially meaningless. (*Id.* at 19-20.) Lindsay asserts that he has no duty to go through the documents and identify those that are relevant to Braziel's requests. (Doc. 63 at 6, .)

A court in the District of Utah recently considered a situation factually similar to this, in which the responding party indicated that the responsive documents had been previously produced in 1400 pages of Bates stamped materials. *FatPipe Networks India Ltd. v. Xroads Networks, Inc.*, No. 2:09-cv-186, 2010 WL 3064369, at *5 (D. Utah Aug. 3, 2010). There, the party moving to

compel a more specific response argued that the responding party failed to delineate which documents were produced according to which document request. *Id.* That court found that the response was insufficient because there was no indication that the documents were produced as maintained in the ordinary course of business. *Id.*

Rule 34 clearly does not require that all documents made available pursuant to a request for production must be organized and labeled in order to assist the requesting party. Though the response is overinclusive, it does affirm that all responsive documents have been produced. Braziel does not allege that Lindsay produced an excessive quantity of wholly irrelevant materials in the initial disclosures, so Lindsay's response is not impermissible. However, Rule 34 does contemplate some degree of organization in producing documents. Because Lindsay has neither organized and labeled the documents nor indicated that the documents responsive to each of these requests were produced as maintained in the ordinary course of business, he must supplement his response. He may either produce the documents and indicate which are responsive to which interrogatory, or he may confirm that the documents were produced as they are kept in the usual course of business.

<u>Request No. 6</u>: Braziel requested copies of all checks from Circle Cross that were payable to Lindsay and to provide documentation justifying the claims for reimbursement and the payments, including proof of the expenditures. (Doc. 61 at 17; Doc. 61 Ex. C at 3.) Lindsay stated the copies of the accounts and accountant's documents were provided to Braziel through subpoena. (Doc. 61 at 17; Doc. 61 Ex. C at 3.) Braziel claims that this response is deficient because "[e]ach check and back up/justification needs to be produced and identified as such." (Doc. 61 at 18.)

Lindsay is under a duty to produce each responsive document in existence. If there are no records beyond those produced by ACG or Sweetser, including any supporting justification, Lindsay

must indicate that fact. However, he bears no duty to identify every responsive document, so long as the documents are produced as they are kept in the usual course of business and so long as he does not engage in impermissible document dumping. Lindsay must supplement this response but need not identify every responsive document.

Request No. 7: This request sought information about the expert witnesses expected to testify at trial, including records, files, resumes, and billing information. (Doc. 61 at 16.) Lindsay did not object and stated that the documents would be produced with expert disclosures. (*Id.*) Lindsay claims that the file of Dr. Fowler was provided to Braziel on October 3 and that the report by Sweetser is incomplete due to delays in Braziel's discovery responses but will be produced as soon as it is available. (Doc. 63 at 7.)

It is clear that, as the Plaintiff asserts, all of the documents sought were not produced. The contents of Dr. Fowler's "file" were described above, and the production of that file alone does not provide all of the information requested here. At the very least, it lacks any report, a resume, and billing information. Furthermore, it appears that there is no file or records from Sweetser, other than a few billing statements, even though she is currently working with Lindsay. Lindsay had an obligation to allow the inspection of all responsive documents available at the time. FED. R. CIV. P. 34(C). Lindsay shall produce all of the requested information concerning these experts.

Request No. 9: Braziel requested all correspondence from or to Lindsay or his representatives related to Braziel and/or Circle Cross. (Doc. 61 at 9; Doc. 61 Ex. C at 3.) The Defendants responded by citing, yet again, to the Bates stamped documents 000001-001299. (Doc. 61 at 9; Doc. 61 Ex. C at 3.) Braziel asserts that the response is not specific and that some documents from Sweetser and others reveal correspondence not included in the 1299 pages. (Doc. 61 at 9.)

13

Lindsay asserts that all information was provided. (Doc. 63 at 8.)

Notably, Lindsay did not object to this request or claim any privilege, so he must produce all documentation of correspondence between himself or his representative and anyone else concerning Braziel or Circle Cross. Again, though, Lindsay is not required to identify each responsive document unless he does not produce the documents as they are kept in the ordinary course of business. Lindsay must supplement his answer to indicate that the documents were produced as they are kept in the usual course of business, and he may use that opportunity to include any additional documents not previously disclosed. Should Braziel bring to the Court's attention correspondence covered by this request that Lindsay failed to produce, Lindsay could be subject to sanctions, up to and including the entry of default judgment.

Request No. 12: Braziel sought all notes, loan documents, shareholder contribution documents, and "other records and things that support or relate in anyway to monies owed you by . . ." Circle Cross. (Doc. 61 at 19; Doc. 61 Ex. C at 3.) Lindsay objected that the request was overbroad on its face, using the terms "related to" and "support," and unduly burdensome. (Doc. 61 at 19; Doc. 61 Ex. C at 3.) Braziel argues that, in this context, the omnibus phrase modifies a specific type of information, so it is not objectionable. (Doc. 67 at 12.)

Lindsay cites to *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648 (D. Kan. 2006), to support his argument that the request is overbroad on its face because it uses the terms "related to" and "support." (Doc. 61 at 9; Doc. 61 Ex. C at 3.) In *Johnson*, the court did note that a document request may be overly broad when it uses omnibus terms, but "only when the omnibus term is used with respect to a general category or broad range of documents." 238 F.R.D. at 658 (citations omitted). If the omnibus terms renders the task of deciding which documents fall under the request

14

a guessing game, then the request is overbroad; however, when the specific category of information sought is identified, the request is not objectionable. *Id.* (citations omitted). Here, the specific category of information is limited to a specific topic: money owed by Circle Cross to Lindsay. This request is not overly broad or unduly burdensome on its face. Lindsay's objection is overruled and he is ordered to provide a response.

Request No. 14: Braziel requested copies of all documents showing Circle Cross' expenditures since June 1, 2010, including checks, bank statements, bookkeeping records, invoices as well as statements and documents supporting those expenditures. (Doc. 61 at 16-17; Doc. 61 Ex. C at 4.) Lindsay responded that such information would be provided by ACG pursuant to Braziel's subpoena. (Doc. 61 at 17; Doc. 61 Ex. C at 4.) Braziel concedes that responsive documents were produced pursuant to the ACG subpoena, but he states that the checks made out to Lindsay for "reimbursement" are not supported by "back up documentation/justification . . . ." (Doc. 61 at 17.) Lindsay asserts that all documents related to the request are in the ACG file. (Doc. 63 at 7.) This same information, supporting documentation for payments from Circle Cross to Lindsay, was addressed in relation to Request No. 6. No response other than that required above is necessary.

## III.  FEES AND COSTS

Braziel requested that the Court order Lindsay to pay attorneys' fees and costs associated with this motion, and Lindsay did not respond. (Doc. 61 at 20; Doc. 63; Doc. 67 at 13.) Where a motion to compel is granted, the court generally must order the payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5). However, in this case, the motion has been granted in part and denied in part. An award of fees is, therefore, unwarranted.

## IV. CONCLUSION

Braziel's motion to compel is granted in part and denied in part. Supplemental responses to the interrogatories and requests for production as ordered above must be provided to Braziel within fourteen (14) days of the entry of this order. The failure to substantially comply with the terms of this order could result in the imposition of sanctions against the Defendants, potentially including the entry of default judgment.

IT IS SO ORDERED.

*William P. Lynch* (signature)
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

16